COMMONWEALTH of Pennsylvania, Appellee,

v.

Claudio HERNANDEZ, Appellant.

Superior Court of Pennsylvania.

Submitted April 26, 2004.

Filed Nov. 19, 2004.

Richard R. Pugh, Lancaster, for appellant.

Susan E. Moyer, Asst. Dist. Atty., Lancaster, for Com., appellee.

BEFORE: KLEIN, POPOVICH, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Claudio Hernandez challenges his judgment of sentence for one count each of Delivery of Heroin and Possession with Intent to Deliver Heroin, see 35 Pa.C.S. § 780–113(a)(30), for which he was sentenced to two consecutive terms of two to six years' incarceration. Hernandez contends that the trial court committed reversible error when it permitted the prosecutor to question him concerning two prior

convictions for possession with intent to deliver heroin. We find that Hernandez's own unsolicited testimony that he had never sold drugs constituted an assertion of good character that the prosecutor was entitled to contradict by reference to countervailing evidence of prior convictions. Consequently, we affirm.

¶ 2 A Lancaster police officer testified at Hernandez's trial that he observed Hernandez give what appeared to be a packet of heroin to another man in exchange for cash. Other officers stopped the other man, and found heroin in his possession. Soon thereafter, officers arrested Hernandez. Following his arrest, Hernandez repeatedly insisted to police officers that he needed his shoes. Prompted by these requests, an officer searched Hernandez's shoes and found three packets of heroin in a hollowed out portion of a shoe heel. Hernandez was charged with one count each of Delivery of Heroin and Possession with Intent to Deliver Heroin.

¶ 3 At trial, Hernandez took the stand. During direct examination, he testified, *inter alia,* to his twenty-year addiction to heroin. During cross-examination, the prosecutor sought to establish how Hernandez secured drugs, or money to purchase drugs, to sustain his habit. Hernandez testified that drug dealers sometimes used him as a test subject, by asking him to sample heroin and assess whether it was good enough to sell. The following discussion ensued:

Q: So [dealers] don't use the drugs themselves?

A: The sellers never use drugs. All they use—all they do is sell them. They want to make money.

Q: And so they use people like yourself who have been drinking in a bar all day to tell them whether it's good or not.

A: Anyone that is an addict or a junkie, they'll use them.

Q: Well, if they use all of them, they're not going to make any money, are they?

A: They make money. All the drug dealers have nice cars, jewelry and everything.

Q: Now, do any drug dealers [*sic*] sell to support their habits?

A: Almost all the addicts, what they do is they steal in stores, they steal cars, they do anything to maintain their habit.

Q: Including selling some drugs and using some, correct?

A: Since I've been a junkie, I don't sell drugs. I'm an addict.

Q: You've been a junkie for 20 years?

\* \* \* \*

A: Yes.

Q: And you just indicated that since you've been a junkie, you've never sold drugs?

A: Since I've been a junkie, no.

MR. HACKMAN [Prosecutor]: Your honor, may I approach?

THE COURT: You may.

\* \* \* \*

(The following occurred at sidebar:)

MR. HACKMAN: Your Honor, it's my belief that at this point, he's opened the door for me to ask him about his prior convictions for delivering drugs, felony convictions for drugs because I never asked him whether or not he sold drugs initially.

He volunteered that by indicating that ever since he's been a junkie, he's never sold drugs. I didn't ask him that. He volunteered that. I believe he's opened the door now because he does have three convictions in the last 20 years for selling drugs.

MR. ESPINOSA [Defense]: I will object to that because that line of question-

ing is beyond the scope of the direct examination. In the direct examination I limited my questions to the events of May 14th specifically. Now he's getting into issues of the past, and we're outside of the scope of direct.

MR. HACKMAN: It's not because it's his explanations of why it is he did or didn't do things on those days. He's the one who started this whole process of getting into whether or not he's a seller or a user.

THE COURT: I agree with the Commonwealth. I'm going to permit the Commonwealth to use his past criminal record.

Notes of Testimony, 6/7/03 (N.T.), at 90–92.

¶ 4 After the adverse ruling, defense counsel sought to minimize the damage by proposing to admit the prior convictions by stipulation. The prosecutor, however, declined. The prosecutor explained, "I think I have the right to ask him about it. If he's going to be truthful or not is another issue for the jury to determine." N.T. at 92–93. The trial court allowed the prosecution to refuse the proposed stipulation, and cross-examination continued.

Q: Mr. Hernandez, it's true, is it not, that in November of 1994 you pled guilty to a felony drug charge?

A: Yes, a possession. It was for personal use but they caught it on me.

Q: That would be a conviction for possession with the intent to deliver drugs, correct?

A: When they caught me for the first time, they put possession with intent to deliver but the attorney told me that if I pled guilty, they were going to drop the intent to deliver since I was a junkie but I don't know if they dropped it or not.

Q: You don't know what you pled guilty to?

A: No, because he told me you're going home today.

Q: And in March of 1998, you also pled guilty to a felony drug charge?

A: No.

Q: You didn't?

A: No. In '98, no.

N.T. at 93–94. After a few additional questions concerning the facts of the allegations before the court, the prosecution concluded its cross-examination. Defense counsel then declined the opportunity to reexamine Hernandez.

¶ 5 In rebuttal, the prosecution called Danette Burkholder, the chief deputy in the Clerk of Courts Office, to testify as to Hernandez's prior convictions. She testified that in 1994, and again in 1998, Hernandez pleaded guilty to single counts of possession with intent to deliver nine bags of heroin. N.T. at 96–98. Defense counsel did not cross-examine Ms. Burkholder.

¶ 6 Following trial, the jury returned a verdict of guilty on both counts alleged. After procedural challenges pertinent to the sentencing proceeding held before the original trial judge, said judge recused himself from sentencing. Soon thereafter, the judge to whom sentencing had been assigned following the trial judge's recusal sentenced Hernandez to two identical consecutive sentences aggregating to four to twelve years' incarceration. Hernandez's post-sentence motion was denied, and this appeal followed.

¶ 7 Hernandez raises the following issue for our review: "WHETHER THE TRIAL COURT ERRED IN ALLOWING THE ASSISTANT DISTRICT ATTORNEY TO CROSS–EXAMINE APPELLANT ON HIS PRIOR RECORD AND TO INTRODUCE, IN REBUTTAL, THE NON-*CRIMEN FALSI* PRIOR RECORD OF APPELLANT." Brief for Appellant at 4.

¶ 8 "Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Bracey*, 831 A.2d 678, 681 (Pa.Super.2003) (internal quotation marks and modifications omitted). "[A] discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusions." *See Commonwealth v. O'Brien*, 836 A.2d 966, 968 (Pa.Super.2003) (internal quotation marks omitted).

¶ 9 Pennsylvania courts go cautiously when considering whether to admit evidence of prior convictions for purposes of impeaching the credibility of a defendant testifying in his own behalf. *See Commonwealth v. Garcia*, 551 Pa. 616, 712 A.2d 746 (1998). Hernandez draws his argument principally from *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978), and *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). Both *Garcia* and *Roots* considered the admission of evidence of prior *crimen falsi* convictions under Pennsylvania Rule of Evidence 404 for purposes of impeachment. *See generally Garcia*, 712 A.2d at 748 (discussing the evolution of the doctrine concerning admissibility of *crimen falsi* convictions, including *Bighum, Roots,* and progeny). In this case, however, we are not presented with *crimen falsi* convictions, thus another standard comes into play. *See Garcia*, 712 A.2d at 748–49 (distinguishing between cases concerning admission of *crimen falsi* convictions and exceptions provided in 42 Pa.C.S. § 5918).

¶ 10 The relevant statute, which permits a trial court to admit evidence of a defendant's non-*crimen falsi* prior convictions under narrow circumstances, provides as follows:

## § 5918. Examination of defendant as to other offenses

No person charged with any crime and called as a witness in his own behalf, shall be asked, or if asked, shall be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation unless:

(1) he shall have at such trial, personally or by counsel, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or

(2) he shall have testified at such trial against a codefendant, charged with the same offense.

42 Pa.C.S. § 5918. We have made clear that § 5918 allows the prosecution to cross-examine a defendant concerning his past convictions to "repudiate specific evidence of good character" offered by that defendant. *Commonwealth v. Trignani*, 334 Pa.Super. 526, 483 A.2d 862, 869 (1984).

¶ 11 In *Trignani* we described the situation at trial as follows:

[Section 5918] states that a witness may be required to answer questions tending to show that he has committed, been charged with, or been convicted of any offense, if he has presented evidence tending to prove his own good character or reputation. Had the appellant limited his testimony to the conduct charged in the criminal information, the Commonwealth would have been prohibited from introducing evidence pertaining to the appellant's prior criminal record. However, the record in the instant case discloses that the appellant exceeded the

scope of questioning by the prosecutor regarding the shooting of Anthony Sanutti and attempted to assert his own good character when he responded to the following question:

Q: You never shot Anthony Sanutti?

A: I never shot anybody in my life.

At this point, a sidebar conference was held outside of the hearing of the jury, wherein the trial court permitted the prosecuting attorney to bring out the appellant's prior conviction for aggravated robbery where a store clerk was shot since the appellant volunteered that he was a nonviolent person. We agree with the Opinion of the lower court which stated that:

> This voluntary admission constituted, in our view, a direct and forcible introduction of Defendant's character for nonviolence. Defendant, when he attempts to apply its lesson to the case at bar, plainly misconceives the intention of *Bighum*. That case considered the use of prior convictions to generally impeach an accused's credibility. Here, the use of the prior conviction was limited to the specific rebuttal of Defendant's unsolicited character testimony.

Thus, the Commonwealth's decision to pursue a line of questioning directed at appellant's prior conviction for aggravated robbery was permissible under 42 Pa.C.S.A. § 5918(1).

*Trignani*, 483 A.2d at 869–70 (internal citations and footnote omitted); *see Commonwealth v. Bastone*, 211 Pa.Super. 509, 239 A.2d 863, 864–65 (1968) (reaching the same result under a similarly-worded predecessor statute where, in response to the question, "Did you rob the Chateau Bar?" defendant replied, "I never robbed anybody in my life").

¶ 12 Here, of course, Hernandez did not simply take the stand and blurt out, "Since I've been a junkie, I don't sell drugs." Nor did the prosecution ask Hernandez whether he ever had sold drugs. The prosecution asked Hernandez whether "any drug dealers [*sic*] sell to support their habits," Notes of Testimony, 6/7/03 (N.T.) at 91, and Hernandez responded that "[a]lmost all the addicts, what they do is they steal in stores, they steal cars, they do anything to maintain their habit." N.T. at 91. Following up on that general inquiry, and Hernandez's general answer, the prosecutor asked whether the things addicts might do to support their habits might "[i]nclude selling some drugs and using some." N.T. at 91. In response to this general question, Hernandez offered a specific assertion that implied his good character with regard to selling drugs: "Since I've been a junkie, I don't sell drugs." N.T. at 91. When a defendant makes an unsolicited attestation of his good character, 42 Pa.C.S. § 5918 clearly permits the prosecution to question the attesting defendant about prior convictions that directly contradict his assertion. *See Trignani, supra; Bastone, supra.*

¶ 13 In *Trignani*, we held that the unsolicited assertion, "I never shot anybody in my life," permitted rebuttal with evidence of prior convictions that contradicted that statement. In *Bastone*, we held that the unsolicited assertion, "I never robbed anybody in my life," also permitted the introduction of evidence of contradictory prior convictions. As in *Trignani*, Hernandez volunteered information the prosecutor did not request when he asserted that he never, in twenty years as a heroin addict, sold heroin. As in *Trignani*, this assertion amounted to an attestation of good character. As in *Trignani*, Hernandez's prior convictions for possession with intent to deliver heroin directly contradicted his statements tending to establish his own good character. Finally, as in *Trignani*,

we are faced with the Commonwealth's use of Hernandez's prior conviction solely to rebut his "unsolicited character testimony." 483 A.2d at 869. We can discern no basis on which to distinguish Hernandez's assertion "Since I've been a junkie, I don't sell drugs" from the above statements. Thus, Hernandez's statement deserves the same treatment as those other statements.

¶ 14 By voluntarily raising the issue of his good character, Hernandez placed himself squarely within the exception provided in § 5918(1) and thus lost his protection against the admission of evidence demonstrating prior convictions for an offense he claimed under oath he had never before committed. Consequently, we reject Hernandez's appeal and affirm his judgment of sentence.

¶ 15 Judgment of Sentence **AF-FIRMED**.

¶ 16 KLEIN, J., files a Dissenting Opinion.

DISSENTING OPINION BY KLEIN, J.:

¶ 1 I respectfully dissent from the majority for two reasons. First, unlike the situation in *Commonwealth v. Trignani*, 334 Pa.Super. 526, 483 A.2d 862 (1984), I do not believe that Hernandez volunteered the statement that he never sold drugs, but rather the Commonwealth used a line of questioning designed to elicit an admission of prior criminal activity by Hernandez. Secondly, since Hernandez admitted he was a long-time junkie and implied he stole to pay for his habit, he did not claim that he was of good character.

**1. The Commonwealth's questioning was designed to elicit an admission of prior criminal activity.**

¶ 2 In this case, the prosecutor asked Hernandez whether drug dealers used the drugs themselves. Once the prosecutor asked if drug dealers sold drugs to support their habits, he was probing into how users might raise money to pay for the drugs. This lead was designed to solicit answers implicating criminal activity, either by stealing to support the habit (which Hernandez said almost all junkies do), or selling drugs to raise funds to get drugs to use. Since the prosecutor led Hernandez down this path, he should not have been permitted to use the answers, whether or not they were false, to introduce prior drug sales.

¶ 3 In this Commonwealth, our courts expressly prohibit a defendant in a criminal case from being cross-examined as to other crimes he may have committed with only two exceptions. *Commonwealth v. Garcia*, 551 Pa. 616, 712 A.2d 746 (1998). Such proof, if admissible at all, may be introduced only during rebuttal by competent witnesses and certified court records, unless the defendant puts his good character in issue or testifies against a co-defendant charged with the same offense. *Id.*, citing 42 Pa.C.S.A. § 5918. *See also Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978); and *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973).

¶ 4 Both *Garcia* and *Roots* considered the admission of evidence under Pennsylvania Rule of Evidence 404 for purposes of impeachment by evidence of prior *crimen falsi* convictions, meaning those that bear on a witness's honesty and truthfulness. In this case, however, we are not presented with *crimen falsi* convictions, thus another standard comes into play. *See Garcia*, 712 A.2d at 748–49 (distinguishing between cases concerning admission of *crimen falsi* convictions and exceptions provided in 42 Pa.C.S. § 5918). The relevant statute, which permits a trial court to admit evidence of a defendant's non-*crimen falsi* prior convictions under narrow circumstances, provides as follows:

**§ 5918. Examination of defendant as to other offenses**

No person charged with any crime and called as a witness in his own behalf, shall be asked, or if asked, shall be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation unless:

(1) he shall have at such trial, personally or by counsel, asked questions of the witness for the prosecution with a view to establish his own good reputation or character or reputation, **or has given evidence tending to prove his own good character or reputation;** or

(2) he shall have testified at such trial against a codefendant charged with the same offense.

42 Pa.C.S. § 5918 (emphasis added). Therefore, section 5918 allows the prosecution to cross-examine a defendant concerning his past convictions to "repudiate specific evidence of good character" offered by a criminal defendant. *Commonwealth v. Trignani*, 334 Pa.Super. 526, 483 A.2d 862, 869 (1984).

¶ 5 In *Trignani*, the prosecuting attorney asked the defendant, on cross-examination, whether he had ever shot a particular person. *Id.* The defendant replied, "I never shot anybody in my life." *Id.* Our court determined that the defendant's response "exceeded the scope of questioning by the prosecutor" and was, in effect, the defendant's attempt to assert his own good character. *Id.* Consequently, we found that the trial court properly permitted the prosecutor to cross-examine the defendant regarding his prior conviction for an aggravated robbery where a store clerk was shot. *Id.* Specifically, our court stated

that the defendant's "voluntary admission constituted ... a direct and forcible introduction of [his] character for nonviolence," and that "the use of the prior conviction was limited to the specific rebuttal of [defendant's] unsolicited character testimony." *Id.*

¶ 6 Here, unlike *Trignani*, Hernandez did not volunteer information to the prosecution; rather, the prosecutor instituted the questioning of Hernandez, asking him whether drug dealers used the drugs themselves. Once the prosecutor asked if drug dealers sold drugs to support their habits, the prosecution was probing into how users might raise money to pay for the drugs. What if Hernandez had said, "Yes, in the past I sold drugs to support my habit, but usually I stole things"? That is a fair response to the question. Unless Hernandez were independently wealthy, these kinds of questions almost always would result in an admission of *some* prior criminal activity.

¶ 7 The District Attorney had to know that his questions were designed to solicit answers implicating some kind of criminal activity, either by stealing to support the habit (which Hernandez said almost all junkies do), or selling drugs to raise funds to get drugs to use. Since the prosecutor led Hernandez down this path, he should not have been permitted to use the answers, regardless of their veracity, to introduce evidence of prior drug convictions.

**2. The defendant did not give evidence of good character.**

¶ 8 Moreover, I disagree with the majority because when Hernandez said he did not sell drugs, it did not mean that he had "given evidence tending to prove his own good character or reputation." Hernandez said he was a long-time junkie, which indicates he is a long-time criminal and certainly not the same as saying he is of good character and unlikely to commit such a

crime. Hernandez said, "Almost all the addicts, what they do is they steal in stores, they steal cars, they do anything to maintain their habit." Read fairly, since Hernandez said he was a junkie, he is saying he was a thief who stole things to pay for his habit. Read in its totality, Hernandez was certainly not claiming good character.

¶ 9 Therefore, this case does not fit within the exception provided in section 5918(1), which would cause Hernandez to lose his protection against the admission of evidence demonstrating prior convictions for an offense he claimed under oath he had never before committed.

¶ 10 For these reasons, I believe that the line of questioning was designed to elicit an admission of criminal activity from Hernandez and that he never attested to "good character." Therefore, I believe the evidence of prior convictions for selling drugs was improperly introduced, and would reverse this conviction. I respectfully dissent.