J-A06030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EARL TUBBS | : | |
| | : | |
| Appellant | : | No. 89 WDA 2021 |

Appeal from the Judgment of Sentence Entered December 2, 2020
In the Court of Common Pleas of Potter County
Criminal Division at No(s): CP-53-CR-0000225-2019

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED: JULY 7, 2022**

Earl Tubbs ("Tubbs") appeals from the judgment of sentence imposed after a jury convicted him of strangulation, recklessly endangering another person ("REAP"), false imprisonment, and two counts of simple assault.[1] After careful review, we vacate the judgment of sentence and remand for a new trial.

The factual and procedural history of this appeal is as follows.  In July 2019, Tubbs and D.P.,[2] who had been in a relationship for about two months, went to Tubbs's camper.  Tubbs began drinking beer as they prepared dinner

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2718(a)(2), 2705, 2903(a), 2701(a)(1), (3).  The trial court separately found Tubbs guilty of a summary offense of harassment.  **See** 18 Pa.C.S.A. § 2709(a)(1).

[2] We elect not to provide D.P.'s full name in light of the assertions of a sexual crime.

and continued to drink that evening. An altercation started between them. Tubbs pushed D.P. onto the bed in the camper, pinned her down, and tried to kiss her without her consent. He pressed his face against her nose so hard she could not breathe. D.P. managed to tell Tubbs she could not breathe, and he eventually got off her and went outside.

D.P. went outside and tried to call 911, but her phone did not have service. She asked Tubbs for his phone, telling him that she wanted to call her son, and Tubbs gave her his phone. She went to her car, but had to ask for Tubbs's help to find the screen to make a call. Without warning, Tubbs pushed D.P. back into the car and pinned her down across the front seats. He grabbed her neck and strangled her while demanding his phone. He then stopped and got out of the car, taking D.P.'s key chain, which had an attached cannister of pepper spray. When D.P. asked for her keys, Tubbs pepper-sprayed her. He then returned her keys, and she managed to drive home. Tubbs later sent D.P. a text apologizing for drinking and "acting like an idiot." *See* Commonwealth's Trial Exhibit 7.

Two days later, D.P. reported the incident to the Pennsylvania State Police. The investigating troopers took photographs of the numerous bruises on D.P.'s arms, leg, and neck. Tubbs admitted to the troopers that he caused D.P.'s bruises. The troopers filed a criminal complaint charging Tubbs with indecent assault, two counts of strangulation, one count for blocking the nose and mouth for the altercation inside Tubbs's camper, and the second count

for pressure to throat or neck for the altercation around D.P.'s car, REAP, false imprisonment, unlawful restraint, and two counts of simple assault.

At Tubbs's jury trial, D.P. testified about the altercations that occurred inside Tubbs's camper and around her car. N.T., 8/17/20, at 28-37. Tubbs testified that he spent the afternoon with D.P., they had gone to his camper, and he drank seven or eight beers throughout the day. *Id*. at 137-38. He had lost interest in having a sexual relationship with D.P. and was messaging another woman when D.P. suddenly grabbed his phone and ran to her car yelling about that woman.[3] *Id*. at 128, 130-31. When he demanded his phone back, D.P., who was sitting in her car, put his phone underneath her right leg, and he moved her leg to retrieve it. *Id*. at 131. Tubbs asserted that the only bruise he would have caused was to D.P.'s leg when he retrieved his phone. He denied touching her otherwise on the day of the incident.[4] *Id*. at 134. Tubbs admitted that he later sent D.P. a text apologizing for drinking and acting like an idiot but asserted that his text concerned "breaking her heart." *Id*.

_____

[3] D.P. testified that she saw Tubbs was messaging another woman on his phone but the message did not bother her and was not part of the altercation in and by her car.

[4] When asked why the investigating troopers stated that he admitted that he caused all of D.P.'s bruises, Tubbs answered, "[P]olice lie." N.T., 8/17/20, at 156.

During cross-examination, the Commonwealth elicited Tubbs's assertion that D.P. was the aggressor in the incident, and Tubbs volunteered that D.P. was aware of his criminal record:

Q. And you stated that I believe that she asked to use your cell, she took your cell phone. So describe how she took that from you?

A. She just grabbed it out of my hand.

Q. So she was the aggressor in all this?

A. Yes. . . . She knew my criminal record, knew my criminal record [sic]. She learned everything about me. I met her, in a matter of three weeks I learned about her, she learned about me. I asked her if she knew my criminal record, she knew I had gotten in fight [sic]. She knew all this. I swear to God she's making it up.

Q. I'm sorry you had a criminal record for what?

A. I got in argument with someone at work place [sic], I grabbed him by the neck. [D.P.] went with me to help pay fines down [sic] magistrates over it. I explained to her what was going on, she knew about that.

Q. So you had a history of some violent conduct, is that right?

A. Pardon me?

Q. You have history of violent conduct?

A. Yeah.

N.T., 8/17/20, at 139-40. Tubbs's counsel objected. At sidebar, the Commonwealth argued that because Tubbs had testified that D.P. was the aggressor in the altercation, he thereby placed his own character for aggression and violence at issue permitting the introduction, under Pa.R.E. 404(a) ("Rule 404(a)"), of evidence of his prior convictions for arson, simple

assault and harassment.[5]  **Id**. at 141-44.  The Commonwealth also argued that Tubbs "opened the door" to the admission of his prior convictions because he testified that D.P. knew about his criminal record and because he had a more extensive criminal record than he suggested during his cross-examination.  **Id**. at 141-44, 147-48.

The trial court ruled that Tubbs had opened the door to his prior convictions under Rule 404(a).  **Id**. at 142-43.  With the trial court's permission, the Commonwealth then cross-examined Tubbs about his 2001 arson conviction, which the Commonwealth asserted involved Tubbs's "burning [of an] ex-girlfriend's car due to a recent breakup," and his 2002 simple assault and harassment convictions, which the Commonwealth described at trial as involving another former girlfriend.  **Id**. at 149-53.

The trial court gave the following cautionary instruction during the Commonwealth's cross-examination:

> [T]hese matters are brought before you for a limited purpose in this case.  It is [Tubbs's] contention that [D.P.] was the aggressor and these are brought for you to under the rules of evidence as essentially rebuttal of that statement and also to demonstrate a trait. . ..  You may not consider it for any other purpose.

---

[5]  As discussed below, Rule 404(a) permits a defendant to introduce evidence of a victim's pertinent character or trait, after which the Commonwealth may offer evidence of the defendant's same trait.  **See** Pa.R.E. 404(a)(2)(B)(ii). We note that neither the Commonwealth nor Tubbs litigated the admissibility of Tubbs's prior convictions in a pre-trial motion *in limine*.

*Id*. at 155.

The jury found Tubbs guilty of one count each of strangulation—pressure to throat or neck, REAP, false imprisonment, and two counts of simple assault.[6]  On December 2, 2020, the trial court sentenced Tubbs to an aggregate term of five to ten years of imprisonment.  Tubbs timely filed a notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Tubbs raises the following issue for review:

> Whether the trial court abused its discretion in admitting . . . evidence of [Tubbs's] convictions for simple assault and arson, pursuant to Pa.R.E[.] 404(a)?

Tubbs's Brief at 5.

Tubbs's issue seeks relief based on the trial court's evidentiary ruling. This Court applies the following standard of review to the trial court's evidentiary ruling:

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion.  An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Nypaver***, 69 A.3d 708, 716 (Pa. Super. 2013) (citation omitted).  This Court may affirm the trial court's evidentiary ruling on any valid basis supported by the record.  ***See Commonwealth v. Johnson***, 160

---

[6] The jury found Tubbs not guilty of strangulation—blocking the nose and mouth, indecent assault, and unlawful restraint.

A.3d 127, 144 n.15 (Pa. 2017). In a criminal case, an appellate court may also deem an erroneous evidentiary ruling harmless beyond a reasonable doubt and affirm on that alternative basis. **See Commonwealth v. Holt**, 273 A.3d 514, 540 (Pa. 2022). An error is harmless if: (1) the error did not prejudice the defendant, or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. **See id**.

Evidence of a person's prior bad acts is not admissible to prove his bad character or criminal propensity but may be admissible when proffered for another relevant purpose. **See** Pa.R.E. 404. In a criminal case, the Commonwealth may introduce evidence of a defendant's character trait if the defendant offers character evidence of his own pertinent trait or a pertinent trait of the victim. **See** Pa.R.E. 404(a)(2); **see also** Pa.R.E. 405 (defining the methods for presenting character evidence). Additionally, pursuant to 42 Pa.C.S.A. § 5918,[7] the Commonwealth may cross-examine a defendant about

---

[7] Section 5918 states, in part:

> No person charged with any crime and called as a witness in his own behalf, shall be asked, or if asked, shall be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than

his prior convictions to directly repudiate unsolicited attestations of his own good character. *See* 42 Pa.C.S.A. § 5918(1); *see also Commonwealth v. Murphy*, 182 A.3d 1002, 1008 (Pa. Super. 2018); *Commonwealth v. Hernandez*, 862 A.2d 647, 651 (Pa. Super. 2004).

Tubbs claims he is entitled to a new trial based on the admission of evidence of his prior convictions for arson and simple assault and harassment. He initially argues that the trial court erred in admitting his prior convictions under Rule 404(a) because he did not offer evidence of his or D.P.'s character. Tubbs's Brief at 23-24. Tubbs also asserts that he did not open the door to the prior convictions because he did not assert his good character. *Id*. at 29, 34-36. Finally, he assigns error to the trial court's cautionary instruction because it did not specifically prohibit the jury from finding guilt based on bad character or propensity. *See id*. at 32-33.

The Commonwealth claims that Tubbs's prior convictions were admissible under 42 Pa.C.S.A. § 5918(1) for the jury to assess the veracity of his testimony. It maintains that Tubbs opened the door to the introduction of

---

the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation unless:

(1) he shall have at such trial, personally or by counsel, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation . . ..

42 Pa.C.S.A. § 5918(1).

evidence of his other convictions by creating false impressions that D.P. was the aggressor in the altercation, had lied about Tubbs attacking her, and knew about his full criminal record. **See** Commonwealth's Brief at 19-20.[8] The Commonwealth observes that Tubbs also testified that the investigating troopers lied when they testified that he admitted to causing D.P.'s bruises, further supporting its right to introduce his prior convictions for the jury's use in assessing his credibility. **See id**. at 19-21, 23. The Commonwealth also asserts that the trial court gave a cautionary instruction, and compelling evidence established Tubbs's guilt, curing any possible error. **Id**. at 33-34.

At trial, the court admitted the evidence of Tubbs's prior convictions under Rule 404(a), **see** N.T., 8/17/20, at 146-48, and gave a limiting instruction that the prior convictions were admitted to rebut his assertion that D.P. was the aggressor, **see id**. at 155.[9] We look at the entire record and both parties' arguments in assessing whether this evidence was admitted in error and required a new trial. After careful review of the record, we are constrained to conclude that the trial court abused its discretion and a new trial is warranted.

---

[8] On appeal, the Commonwealth essentially abandons its argument at trial that Tubbs's prior convictions were admissible under Rule 404(a). **See** Commonwealth's Brief at 37 (suggesting that the trial court's citation of Pa.R.E. 404(a) as the basis for the admission of Tubbs's prior convictions was to the wrong statute, but harmless).

[9] In its Rule 1925(a) opinion, however, the trial court opined that it now believes its ruling was error requiring a new trial.

First, we hold that the trial court erred in admitting under Rule 404(a) evidence of Tubbs's prior convictions. Although Tubbs testified that D.P. was the aggressor in the altercation, he did not testify about D.P.'s reputation for, or D.P.'s prior acts, of aggression and violence, nor did he testify about his own character for peacefulness and nonviolence. Therefore, Tubbs did not present evidence of a relevant character trait. Moreover, Rule 404(a) would not permit the Commonwealth to rebut Tubbs's alleged character evidence by cross-examining him about specific instances of his prior conduct. *See Commonwealth v. Crosley*, 180 A.3d 761, 769 (Pa. Super. 2018) (concluding that the trial court abused its discretion in allowing the Commonwealth to cross-examine Crosley about his prior convictions after he placed the victim's prior acts of violence at issue); *see also* Pa.R.E. 405 (limiting the Commonwealth's rebuttal of a defendant's character evidence to testimony about the defendant's reputation). Thus, the trial court's allowance of Tubbs's prior convictions for arson, simple assault, and harassment on cross-examination under Rule 404(a) was error. *See Crosley*, 180 A.3d at 769.

Further, we discern no merit to the Commonwealth's argument that section 5918(1) provided an alternative basis to admit Tubbs's prior convictions based on Tubbs's testimony that D.P. was the aggressor.[10]

_____

[10] Tubbs asserts that the Commonwealth waived its argument that Tubbs's prior convictions were admissible to rebut false impressions pursuant to

Section 5918(1), unlike Rule 404(a), does not allow the admission of a defendant's prior conviction to rebut allegations concerning a victim's character for violence. *Compare* 42 Pa.C.S.A. § 5918(1) (allowing the Commonwealth to question a party about prior convictions when the defendant raises his own good character) *with* Pa.R.E. 404(a) (allowing the Commonwealth to use character evidence to establish a defendant's character on a trait that defendant initially offered about the victim). Rather, section 5918(1) permits rebuttal of a defendant's unsolicited testimony of his own good character. *See Crosley*, 180 A.3d at 770. Nothing in Tubbs's testimony tended to show his good character for peacefulness and nonviolence. To the contrary, Tubbs referred to his prior conviction for a crime of violence in response to a question on cross-examination that did not attempt to elicit his criminal record. *See* N.T., 8/17/20, at 139-40 (indicating that Tubbs spontaneously stated that D.P. knew about his prior record and that he previously grabbed someone at work by the neck); *accord Nypaver*, 69 A.3d at 717 (rejecting Nypaver's argument that he could question a co-defendant regarding prior bad acts where the co-defendant admitted to committing prior bad acts did not create a false impression that the co-defendant was a "model citizen").

_____

section 5918(1). *See* Tubbs's Brief at 27 n.4. However, because this Court may affirm the trial court's evidentiary rulings on any basis apparent in the record, we decline to find waiver. *See Johnson*, 160 A.3d at 144 n.15.

To the extent the Commonwealth argues that Tubbs implied that he told D.P. about his full criminal record rather than a single fight and thus suggested his good character for honesty, we note that Tubbs did not testify that he told D.P. about his entire criminal record. *See* N.T., 8/17/20, at 139. Moreover, even assuming for the purposes of argument that Tubbs placed his character for honesty at issue, the Commonwealth did not limit its cross-examination to rebutting a trait of honesty. Instead, consistent with its deficient proffer under Rule 404(a), the Commonwealth used Tubbs's prior convictions to show his aggression and violence against former girlfriends. *See* N.T., 8/17/20, at 149-52 (asserting that Tubbs's prior arson conviction involved setting a former girlfriend's car on fire, and that his prior simple assault and harassment convictions involved another former girlfriend). Section 5918(1) case law is clear that the use of prior convictions under that section must directly contradict good character evidence offered by the defendant. *See Murphy*, 182 A.3d at 1005-08 (concluding that the trial court properly allowed the Commonwealth to question Murphy about his prior admission to possessing drugs in prison during a prison administrative proceeding when he denied ever possessing drugs while incarcerated); *Hernandez*, 862 A.2d at 651 (concluding that the trial court properly allowed the Commonwealth to question Hernandez about his prior convictions for selling drugs after Hernandez testified that he did not sell drugs after a certain time). Thus, even if section 5918(1) permitted the Commonwealth to rebut Tubbs's implication that he was honest with D.P., it did not open the door to the Commonwealth's

attempt to establish Tubbs's propensity for aggression or violence. Therefore, we conclude that section 5918(1) did not permit the Commonwealth to rebut the impression that Tubbs was an honest person by cross-examining him with evidence that his prior convictions involved aggression or violence towards former domestic partners. [11]

Lastly, our review of the trial court's cautionary instruction compels the conclusion that it did not cure the undue prejudice arising from the improper admission of Tubbs's prior convictions. The trial court gave an instruction premised on its erroneous belief that Tubbs's prior convictions were admissible under Rule 404(a). **See** N.T., 8/17/20, at 155. The instruction did not cure the undue prejudice resulting from the error in admitting Tubbs's prior convictions under Rule 404(a) to rebut Tubbs's assertion that D.P. was the aggressor and establish Tubbs's own character for aggression and violence.

_____

[11] We also discern no merit to the Commonwealth's assertion that the admission of Tubbs's prior convictions was proper to rebut his "poor me" testimony. **See** Commonwealth's Brief at 24-26 (citing **Commonwealth v. Days**, 784 A.2d 817, 821 (Pa. Super. 2001) (discussing the admission of evidence of Days's prior convictions to rebut his "poor me" testimony that created an impression that he was a dedicated father who previously tried to see his children but had been subject to unfair treatment by the police and the children's mother)). In **Days**, the Commonwealth used Days's prior convictions to contradict the misleading testimony that he could not have been present at the scene of a crime because his former girlfriend would have had him arrested for trespass as she had in the past. **See Days**, 784 A.2d at 818-20. Here, there is no correspondingly direct relevance between Tubbs's testimony and the Commonwealth's use of evidence establishing that Tubbs had an aggressive or violent character.

Further, even assuming without deciding that D.P.'s and the investigating troopers' testimony were sufficiently credible to sustain Tubbs's convictions for assaulting D.P., we are constrained to conclude that the admission of Tubbs's prior convictions was not *de minimis*, cumulative of properly admitted evidence, or so insignificant to the properly admitted and uncontradicted evidence of his guilt that the error could not have contributed to the verdict beyond a reasonable doubt. **See Holt**, 273 A.3d at 540. Thus, none of the factors of the harmless error test have been met, and we are constrained to conclude that there was a reasonable possibility that the error contributed to the verdict. **See id**.; **See also Commonwealth v. Fulton**, 179 A.3d 475, 493 (Pa. 2018) (noting that "[w]henever there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless" (citation and quotation marks omitted)); **Commonwealth v. Aponte**, 855 A.2d 800, 811 n.12 (Pa. 2004) (noting that "[e]vidence of prior criminal activity . . . is probably only equaled by a confession in its prejudicial impact upon a jury" (citation omitted)).

Accordingly, a review of the parties' arguments and the record compels us to conclude that the trial court abused its discretion, that the error was not harmless, and that a new trial is required.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

- 14 -

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/7/2022</u>