J-S33012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TELLY HARRIS | : | |
| | : | |
| Appellant | : | No. 39 WDA 2023 |

Appeal from the Judgment of Sentence Entered May 25, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001874-2021

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:              **FILED: December 18, 2023**

Appellant, Telly Harris, appeals *nunc pro tunc* and *pro se* from the judgment of sentence of an aggregate term of 8 to 23 months' imprisonment, imposed after he was convicted of one count each of simple assault (18 Pa.C.S. § 2701(a)(1)) and harassment (18 Pa.C.S. § 2709(a)(1)).  Appellant challenges the weight of the evidence to support his simple assault conviction, as well as the trial court's admission of evidence of Appellant's prior bad acts. We affirm.

Appellant's convictions stem from an altercation with his brother, Scott Harris, on July 13, 2021.  We reproduce Appellant's summary of the facts established at trial:

> On or about 10:00 AM on July 13, 2021, Scott Harris was working for Erie Insurance virtually at his residence when his brother,

_____

[*] Former Justice specially assigned to the Superior Court.

[Appellant], arrived. As Scott Harris worked, [Appellant] went back and forth from watching tv in the living room to sitting outside on the porch. Sometime between 5:00 PM and 5:45 [PM], [Appellant] and Scott Harris had a conversation about [Appellant's] wanting to move to Alabama or Cincinnati. Scott Harris allegedly suggested to his brother that instead of moving, [Appellant] should check himself into rehab. Scott Harris allege[d] that as he was speaking to his brother and looking down at his phone, [Appellant] got up and proceeded to attack Scott Harris, who was sitting on the edge of the sofa: "And the next thing I know he was on top of me, he was hitting me, he just started attacking me" ([N.T. Day 1, 3/24/22,] at 23). [Appellant] allegedly hit Scott Harris on the right side of his rib with his fist. Scott Harris testified that his brother knocked the wind out of him, and he could not breathe, and that he rolled onto his left side on the sofa…. [Appellant] then hit his brother again on his side. Scott Harris rolled off the sofa onto the floor and proceeded to crawl to the door.

Scott Harris managed to get out of the house and crawled to his next-door neighbor's house belonging to Dupree Deboe (phonetic). Donald Cheney was also at Deboe's residence at the time. Scott Harris asked the neighbor to call 9-1-1 and said that his brother assaulted him. Scott Harris sat on the porch and noticed his brother walking toward the neighbor's house. Scott Harris allege[d] that his brother yelled verbal assaults at him. To get his brother to stay away from him, Scott Harris pretended to pick something up. [Appellant] then picked up a trash can. The neighbors pulled Scott Harris back into the residence and [Appellant] walked away. Cheney proceeded to drive Scott Harris to the hospital, at which time Scott [Harris] saw his brother and had Cheney call the police. Due to not wanting his brother to get away, Scott [Harris] … exited the car and walked towards [Appellant,] who was standing in front of a house at 114 East 21st Street[]. [Appellant] proceeded to run into the residence, and that is when the police arrived.

The police asked Scott Harris and Cheney repeatedly if they had guns on them, due to receiving a call that they did. Scott Harris testified that he did not possess a gun at all. After questioning, the police arrived at the residence and an ambulance took Scott Harris to St. Vincent's Hospital. At the hospital, Scott Harris was diagnosed with two broken ribs.

Corporal Justin Starvaggi from the Erie Police Department, who was a patrolman at the time of the incident, testified on behalf of the Commonwealth. He testified that on July 13, 2021, he arrived at 114 East 21st Street in his full uniform and marked police vehicle. Corporal Starvaggi was responding to a dispatch of an assault with a firearm. The call was made by [Appellant]. Corporal Starvaggi testified that there were no signs of [Appellant's] having an asthma attack. [Appellant] told Corporal Starvaggi that his brother "had chased him down the street with a gun and had hit him in the back with it[.]" ([*Id.*] at 49). Corporal Starvaggi testified that he did not observe any injuries on [Appellant]. Corporal Starvaggi then arrived at 2114 Holland Street and observed a dark blue sedan leave the residence. The neighbor told Corporal Starvaggi that Scott Harris had just left in the car. At the time, thinking Scott Harris was a suspect, Corporal Starvaggi advised other units of the sedan and proceeded to look for the vehicle himself. Arriving back at 114 East 21st Street, [Corporal Starvaggi] found Scott Harris standing in the middle of the street holding his ribs and not showing any indication of fleeing. Corporal Starvaggi testified that he noticed "minor redness to … Scott Harris'[s] side[.]" ([*Id.*] at 52). Corporal Starvaggi testified that both Scott Harris and Cheney refuted owning a gun. Corporal Starvaggi identified [Appellant] in the courtroom.

[Appellant] testified at trial. He stated that he was … residing temporarily at 2114 Holland Street with his brother before the alleged incident, but has not since the incident. [Appellant] spent the three nights previous to the incident at the residence as well. [Appellant] testified that he told his brother he would stay at the residence for a while before moving to Cincinnati, Ohio[,] to reside with his step-daughter. He stated that his brother accused him of only smoking weed and eating the food at the residence. Allegedly, Scott Harris hit his brother with his hand and punched him in his chest [and] then the two proceeded to roll around. [Appellant] testified that he was defending himself, and he testified that Scott Harris ran upstairs where he kept his gun and came back downstairs with a silver[,] pearl handle gun.

Upon cross-examination, [Appellant] testified that he never saw his brother go upstairs, but saw him walk in the direction of the stairs, and that Scott [Harris] threatened to kill [Appellant]. [Appellant] then proceeded to run out of the house and picked up the garbage can, throwing it to throw his brother off his angle. [Appellant] then ran down the alley and went to someone's house

down the street, with Scott [Harris] chasing after him. At 114 East 21st Street, [Appellant] called the police and told them his brother was chasing him with a gun. When the police arrived, [Appellant] stated that he was having an asthma attack. [Appellant] stated that he told a female police officer that he wanted to press charges against his brother. [Appellant] testified that he and his brother never hit each other. [Appellant] also testified he never said the gun hit him in his back. [Appellant] also testified that he never looked back to see how long his brother chased him.

Appellant's Brief at 3-7.

On March 25, 2022, at the close of a two-day trial, the jury found Appellant guilty of simple assault, and the trial court entered a guilty verdict of harassment against him. Following a subsequent **Grazier**[1] hearing, at which Appellant knowingly, intelligently, and voluntarily waived his right to counsel, the trial court permitted Appellant to proceed *pro se*. Order, 5/19/22 (single page). On May 25, 2022, Appellant was sentenced to 8 to 23 months of imprisonment.[2]

Thereafter, Appellant filed *pro se* documents with the trial court, requesting, *inter alia*, that the court allow him to proceed *in forma pauperis* ("IFP"), appoint him counsel, and grant him post-conviction relief. On October 13, 2022, the trial court granted Appellant's motion to appoint counsel and to proceed IFP, and it appointed Tina Fryling, Esquire, to represent Appellant.

---

[1] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[2] Appellant filed a *pro se* motion to modify his sentence, which was denied by order of court dated June 28, 2022. By separate order of court also dated June 28, 2022, the court denied without prejudice Appellant's *pro se* petition for relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, as premature.

On December 9, 2022, after a hearing on his motion seeking post-conviction relief, Appellant's right to a direct appeal was reinstated *nunc pro tunc*. Appellant filed a timely notice of appeal on January 4, 2023, and the court directed him to file a Pa.R.A.P. 1925(b) concise statement or errors complained of on appeal. Appellant timely complied, and the trial court filed a responsive Rule 1925(a) opinion on March 13, 2023.

On September 28, 2023, while this appeal was pending, Appellant, through his appointed counsel, filed an application to remand for the purpose of a **Grazier** hearing. We granted Appellant's request and retained jurisdiction. **See** *Per Curiam* Order, 10/5/23 (single page). The PCRA court held a hearing and entered an order on October 25, 2022, stating in relevant part:

> A hearing was conducted regarding this issue on October 24, 2023. [Appellant] appeared in person and was placed under oath prior to the colloquy with the [c]ourt regarding representation on appeal. [Appellant] knowingly and voluntarily indicated he would prefer to represent himself on appeal rather than move forward with his current[,] court-appointed counsel, and he understood and accepted the obligations entailed with self-representation. It is therefore ORDERED that Attorney Tina M. Fryling, Esq.[,] is REMOVED as counsel for [Appellant] and [Appellant] is permitted to proceed *pro se*.

Order, 10-25-23 (single page). Accordingly, Appellant's *pro se* appeal is now properly before us for review.[3, 4, 5]

_____

[3] On November 28, 2023, Appellant filed an application for relief with this Court, in which he contends that he did **not** "knowingly, intelligently, and voluntarily waive his right to be represented by counsel[.]" Application for Relief, 11/28/23, at 1. He clarifies that he "did not wish to proceed *pro se* but wanted new counsel appointed…." ***Id.*** As the certified record does not contain a transcript from the October 24, 2023 ***Grazier*** hearing, we accept the PCRA court's position and deny Appellant's application for relief. ***See Commonwealth v. Stewart***, 775 A.2d 819, 833 (Pa. Super. 2001) (noting that Pa.R.A.P. 1911 "makes it abundantly plain that it is the responsibility of the [a]ppellant to order all transcripts necessary to the disposition of his appeal"). Moreover, Appellant fails to indicate what type of relief he is seeking from this Court. We presume that he wishes to be appointed new counsel; however, Appellant does not have a right to counsel of his choice. ***See Commonwealth v. Floyd***, 937 A.2d 494, 497 (Pa. Super. 2007) ("[T]he right to appointed counsel does not include the right to counsel of the defendant's choice.") (citation omitted).

[4] On November 30, 2023, Appellant filed an application to proceed IFP. We deny Appellant's request, as he is already proceeding IFP on appeal. ***See*** Appeal Docket Sheet at 1 (indicating Appellant is proceeding IFP on appeal).

[5] On November 30, 2023, Appellant filed a *pro se* application with this Court seeking relief under the PCRA. However, when the PCRA court reinstated Appellant's right to appeal *nunc pro tunc*, Appellant's sentence was no longer final. Thus, not only is his petition premature, but it was error for Appellant to file that petition with this Court in the first instance, rather than with the PCRA court. ***See*** 42 Pa.C.S. § 9545(b) (requiring a petition be filed within one year of the date the judgment of sentence becomes final, which occurs at the conclusion of direct review); 42 Pa.C.S. § 9545(a) ("Original jurisdiction over a proceeding under this subchapter shall be in the court of common pleas."). We recognize that, in his petition, Appellant seems to be challenging the legality of his sentence, taking issue with the credit for time served that he was afforded. However, his *pro se*, handwritten argument is nearly incomprehensible and, thus, he has not demonstrated that any relief is due. Accordingly, we deny his petition, without prejudice to his right to raise his claims in a timely-filed PCRA petition after his judgment of sentence becomes final.

On appeal, Appellant presents the following issues for our review:

[I.] The verdict in this case was against the weight of the evidence in that the Commonwealth did not prove beyond a reasonable doubt that [Appellant] committed an offense against his brother rather than merely defending himself[.]

[II.] The trial court erred in allowing the jury to consider [Appellant's] past arrests/convictions[.]

Appellant's Brief at 2 (footnote and unnecessary capitalization omitted).

We begin by considering whether Appellant's first claim has been properly preserved. "To properly be preserved, a weight of the evidence claim must be raised in a motion prior to sentencing, in an oral motion at sentencing, or a post-sentence motion." *Commonwealth v. Antidormi*, 84 A.3d 736, 758 n.19 (Pa. Super. 2014) (citing *Commonwealth v. Griffin*, 65 A.3d 932, 938 (Pa. Super. 2013)). *See also* Pa.R.Crim.P. 607(A)(1)-(3). We have reviewed the certified record and discern that Appellant failed to raise, prior to sentencing, in an oral motion at sentencing, or in a post-sentence motion, his claim regarding the weight of the evidence. As such, we are constrained to deem this issue waived.

Nevertheless, even if Appellant had properly preserved his weight claim before the trial court, we would conclude that it is meritless. We would review Appellant's challenge to the weight of the evidence mindful of the following legal principles:

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015), *appeal denied*, … 138 A.3d 4 ([Pa.] 2016) (quotation marks and citation omitted).

> Resolving contradictory testimony and questions of credibility are matters for the finder of fact. ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. ***Talbert***, [129 A.3d] at 546.
>
> Moreover, "Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence." ***Id.*** at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." ***Id.*** at 546. "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Id.***
>
> Furthermore, "in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Id.*** (quotation marks and citation omitted).

***Commonwealth v. Miller***, 172 A.3d 632, 642-43 (Pa. Super. 2017) (some brackets in original).

Instantly, Appellant claims that "the jury's verdict shocks the conscience, considering the evidence presented at trial." Appellant's Brief at 8. In support of his argument, Appellant merely points to self-serving, contradictory evidence presented at trial:

> Scott Harris testified that he drove towards his brother instead of towards the hospital after the incident occurred. [Appellant's] testimony was that he believed he saw his brother come after him with a gun and believed he was threatened. He then got scared, had an asthma attack, and ran away. The first call regarding this incident came to the police [at] 6:06 on the evening of July 13th. The second call does not come until 6:16 on July 13th, approximately ten minutes later, from Scott [Harris] who said he "saw [Appellant]" on his way to the hospital and, instead of

- 8 -

continuing to the hospital, followed [Appellant]. The fact that Scott [Harris] found and followed [Appellant] supports [Appellant's] claim that he acted in self[-]defense and thus is not guilty of simple assault.

*Id.* at 9.

In response, the trial court opined:

The verdicts were not against the weight of the evidence. The jury's verdict of guilty of simple assault and this court's verdict of guilty of harassment-summary offense were proper[] based on the evidence presented by the Commonwealth and especially upon the credibility determinations made by this court and jury independently. Simply put, the jury and this court believed the victim, Scott Harris, who is [Appellant's] brother[,] and did not believe [Appellant's] trial testimony.

TCO at 1 (cleaned up).

Appellant essentially asks us to reassess the credibility of the eyewitnesses and reweigh the testimony and evidence presented at trial. We cannot and would not do so. The trial court was free to believe the testimony of Scott Harris over Appellant. *See Miller*, 172 A.3d at 642. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. Thus, we would discern no abuse of discretion in the trial court's determination that the jury's verdict was not against the weight of the evidence, and we would conclude that no relief is due on Appellant's weight claim.

In his second issue, Appellant claims that the trial court erred in allowing the jury to consider his 2014 and 2015 retail theft convictions. Appellant's Brief at 9. He contends that

[he] did not put his good character at issue; no character witnesses were presented on his behalf. Further, [Appellant] asserts that the evidence should have been disallowed due to its prejudicial nature. … [Appellant's] prior acts of retail theft were so unrelated to the issue of whether or not he struck his brother based on self[-]defense or not, that it should not have been brought up by the prosecutor and was too prejudicial to be used at trial.

*Id.* at 11. No relief is due on this claim.

It is well-established that:

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion. A discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusions.

***Commonwealth v. Hernandez***, 862 A.2d 647, 650 (Pa. Super. 2004) (internal quotation marks and citations omitted).

"In Pennsylvania, a witness may be impeached by showing a prior conviction if the crime involved dishonesty or false statement. Burglary and theft are offenses which are *crimen falsi*." ***Commonwealth v. LaMossa***, 532 A.2d 450, 452 (Pa. Super. 1987) (citations omitted). The relevant rule of evidence provides:

**Rule 609. Impeachment by Evidence of a Criminal Conviction**

**(a)** **In General.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.

**(b)** **Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement

- 10 -

> for it, whichever is later. Evidence of the conviction is admissible only if:
>
> (1) Its probative value substantially outweighs its prejudicial effect; and
>
> (2) The proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609(a), (b).

As the trial court explained, Appellant's prior retail theft convictions were introduced "for *crimen falsi* purposes since [Appellant] elected to testify." TCO at 2.

> [H]is trial counsel stipulated to the use of 2014 and 2015 retail theft convictions (N.T.[] Day 1[] at 70). They were then brought up on cross-examination of [Appellant] by the prosecutor. (N.T.[]Day 2, 3/25/22,] at 37). The court gave the appropriate Standard Jury Instruction regarding the limited use of that evidence during deliberation. ([*Id.*] at 69-70). Therefore, the prior convictions were properly admitted….

*Id.* (cleaned up).

We agree. Because Appellant's prior convictions were clearly for *crimen falsi* offenses, *i.e.*, theft, and less than 10 years have passed since said convictions, we discern no abuse of discretion regarding the trial court's decision to allow the admission of such evidence. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/18/2023