J-S08023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SYIED DRUMMOND | : | |
| | : | |
| Appellant | : | No. 557 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 8, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002433-2021

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: MARCH 21, 2024**

Syied Drummond (Appellant) appeals from the judgment of sentence imposed following his jury convictions of aggravated assault – serious bodily injury, aggravated assault with a deadly weapon, and recklessly endangering another person.[1]  Appellant challenges the trial court's evidentiary rulings in granting the Commonwealth's pre-trial motion *in limine*.  We affirm.

Appellant's convictions arose out of his August 2020 stabbing of Javier Rivera ("Rivera" or "the victim") outside of a barber shop (Rivera's place of employment) located in York, Pennsylvania.  Rivera first met Appellant in 2018, when Appellant arrived at Rivera's barber shop and offered to sell Rivera

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), 2705.

DVDs. *See* N.T., 1/23-26/23, 243. When Rivera declined, "[Appellant] kind of got upset"; the men "got into an argument"; Appellant "struck [Rivera] in [his] face"; and Appellant bit Rivera's back during the ensuing tussle.[2] *Id.* at 244; *see also id.* at 248-50. Rivera did not report the 2018 altercation to police. *Id.* at 251.

On August 16, 2020, Appellant approached Rivera outside of Rivera's barber shop. *Id.* at 259. According to Rivera,

> [Appellant] actually walked up to me and tried to shake my hand and said, what's up. As soon as he … did that, like, I backed up and I put my hands up and I was like, Yo, just leave that -- leave it like that, yo. From denying his handshake, he punched me in the face.

*Id.* (formatting modified). A struggle ensued during which Appellant withdrew a knife from his person and stabbed Rivera. *Id.* at 262-66.

In June 2021, the Commonwealth charged Appellant with the above-mentioned offenses and attempted murder.[3] The Commonwealth filed a motion *in limine* on June 27, 2022. The Commonwealth initially sought to

_____

[2] As we discuss further below, the trial court made a pre-trial ruling on the admissibility of this prior altercation, which we hereinafter refer to as the "2018 altercation."

[3] 18 Pa.C.S.A. §§ 901(a) and 2501.

admit evidence of the 2018 altercation pursuant to Pa.R.E. 404(b).[4] The Commonwealth claimed (1) the 2018 altercation was relevant to shed light on Appellant's motive for stabbing Rivera in August 2020; and (2) the probative value of the 2018 altercation outweighed its potential to prejudice the defense. *See* Motion *in Limine*, 6/27/22, ¶¶ 4-26. The Commonwealth claimed a "logical connection proving motive exists between" the 2018 altercation and the August 2020 stabbing, "because the prior [2018 altercation] demonstrates why [Appellant] had animosity toward [Rivera]." *Id.* ¶ 16. According to the Commonwealth, "without this evidence, the Commonwealth lacks any evidence of the motive for [Appellant's] attempt on Mr. Rivera's life." *Id.* ¶ 25.

---

[4] Rule 404(b) governs admissibility of "prior bad act" evidence, and provides, in relevant part, as follows:

> **(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> **(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1), (2). In addition to the grounds enumerated in Rule 404(b)(2) that allow for the possible admission of prior bad acts evidence, our Supreme Court has created another special circumstance, known as the *res gestae* exception, where prior bad acts evidence is admissible if the evidence is "part of the history of [the] case and formed part of [the] natural development of facts[.]" *Commonwealth v. Solano*, 129 A.3d 1156, 1178 (Pa. 2015) (citation omitted).

The motion *in limine* also sought exclusion of Rivera's prior conviction for simple assault (Rivera's 2009 conviction), pursuant to Pa.R.E. 404(b) and Pa.R.E. 403 (governing exclusion of certain relevant evidence). *Id.* ¶¶ 27-40. The Commonwealth stated it "anticipates that the defense, in pursuing a self-defense claim, will use [Rivera's 2009 conviction] to prove that Mr. Rivera has a violent character and was therefore the aggressor" in the August 2020 incident. *Id.* ¶ 34. According to the Commonwealth, "[b]oth the time since [Rivera's 2009] conviction and the dissimilarity of the conduct at issue between the prior conviction and this case render the prior conviction at best minimally probative." *Id.* ¶ 39.

Finally, the motion *in limine* sought exclusion of Rivera's mental health history pursuant to Pa.R.E. 403. *Id.* ¶¶ 41-46. The Commonwealth noted that

> during the sentencing hearing on Mr. Rivera's [2009] conviction, Brian J. Stevens, M.D. [(Dr. Stevens)], a psychiatrist, testified that Mr. Rivera had been diagnosed with bipolar disorder and attention deficit hyperactivity disorder, and that Mr. Rivera had shown symptoms of an explosive temper or overreacting.

*Id.* ¶ 41; *see also id.* Ex. B (Rivera's sentencing transcript, at York County Court of Common Pleas docket CP-67-CR-4065-2008, containing Dr. Stevens' testimony). The Commonwealth claimed this evidence was not probative as to the charges against Appellant and would cause the Commonwealth undue prejudice. *Id.* ¶¶ 45-46.

Before the commencement of Appellant's jury trial, the trial court addressed the Commonwealth's motion *in limine* and considered argument from the parties. *See* N.T., 1/23-26/23, at 5-19. Appellant's trial counsel initially addressed the Commonwealth's request to introduce evidence of the 2018 altercation. Trial counsel argued the defense

> run[s] the major danger of unfair prejudice with the fact that the jury could hold [the 2018 altercation] against [Appellant] as propensity evidence and say, well, [Appellant] fought this guy once so he would fight him again.

*Id.* at 7. Trial counsel further asked the trial court not to exclude evidence of Rivera's 2009 conviction, arguing it was relevant to the issues at trial and that "these incidents are actually very similar." *Id.* at 13; *see also id.* (trial counsel arguing Rivera's 14-year-old conviction was not temporally stale).

The trial court excluded evidence of Rivera's 2009 conviction and his mental health history. *Id.* at 19. The court granted admission of the 2018 altercation. *Id.* at 12.

At trial, Appellant's counsel vigorously cross-examined Rivera about both the 2018 altercation and the August 2020 stabbing, as well as the nature of the underlying dispute between Rivera and Appellant. N.T., 1/23-26/23, at 260, 294-98, 305-08. Appellant testified at trial and presented a self-defense theory. *See id.* at 412-59; *see also Commonwealth v. Burns*, 765 A.2d 1144, 1148-49 (Pa. Super. 2000) (detailing law pertaining to self-defense). Regarding the 2018 altercation, Appellant claimed Rivera initiated it by

ridiculing Appellant for selling outdated DVDs.[5]  N.T., 1/23-26/23, at 412-13.

In describing the August 2020 incident, Appellant denied being the aggressor.

*Id.* at 420.  Appellant testified he approached Rivera to inquire whether the

men "can [] put this behind us," *i.e.*, referencing the 2018 altercation.  *Id.*

According to Appellant, Rivera responded, "Fuck off 'fore I blow your face off."

*Id.*  Appellant testified Rivera "threw the first punch."  *Id.* at 421.  Appellant

admitted he withdrew a knife and stabbed Rivera, but only to protect himself

when Rivera introduced a gun into the affray and pointed it at Appellant.  *Id.*

at 422-23.

Notably, the Commonwealth cross-examined Appellant about the 2018

altercation as follows:

> Q. And so you took enough offense to that little statement that
> [the victim] may have made such that you wanted to confront him
> about it; is that correct?
>
> A. No, I did not.  It was not that serious.  Anybody could tell that
> knows me, it was no comparison.  It was seriously -- like, I already
> had the money.  I just had to address what [the victim] did.  That
> was real lame, for real.  Why are you worried about what I'm
> doing?  **I'm not out here selling drugs** or out here robbing
> people.  I got my own little business and things going on.  I didn't
> work for nobody.  I work for myself.

---

[5] Appellant testified he sold various items, including weapons, DVDs, clothes,
and pornography.  N.T., 1/23-26/23, at 413, 419.

*Id.* at 435 (emphasis added). The trial court ruled that Appellant's remark about not selling drugs "opened the door" to evidence of Appellant's prior conviction of possession with intent to deliver cocaine[6] (PWID). *Id.* at 649.

The jury ultimately found Appellant guilty of the above-mentioned offenses but acquitted him of attempted murder. On March 8, 2023, the trial court sentenced Appellant to an aggregate 10 to 20 years in prison. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

> Appellant presents three issues for our consideration:
>
> **Issue One**: Did the lower court abuse its discretion in admitting [Appellant's] prior conviction for [PWID] to impeach his trial testimony where: A) the conviction did not contradict [Appellant's] testimony; B) any actual impeachment concerned a collateral matter; and C) any probative value the conviction might have had was outweighed by its prejudicial effect?
>
> **Issue Two**: Did the lower court abuse its discretion in excluding [] Rivera's prior conviction for simple assault where this conviction supported [Appellant's] claim of self-defense and was neither so dissimilar to Rivera's alleged conduct nor remote in time as to lack probative value?
>
> **Issue Three**: Did the lower court abuse its discretion in excluding evidence of Rivera's "symptoms of an explosive temper or overreacting" where these symptoms supported [Appellant's] claim of self-defense and the court barred the evidence largely due to its own personal experiences with bipolarity as opposed to evidence of record?

Appellant's Brief at 4.

_____

[6] 35 P.S. § 780-113(a)(30).

Appellant's issues implicate the admissibility of evidence and the trial court's ruling on the Commonwealth's motion *in limine*; we review such rulings for an abuse of discretion. ***Commonwealth v. Mangel***, 181 A.3d 1154, 1158 (Pa. Super. 2018); ***see also Commonwealth v. Mendez***, 74 A.3d 256, 260 (Pa. Super. 2013) (stating the "standard of review for a trial court's evidentiary rulings is narrow" (citation omitted)).

> An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Harrington***, 262 A.3d 639, 646 (Pa. Super. 2021) (citation omitted); ***see also Commonwealth v. Hernandez***, 862 A.2d 647, 650 (Pa. Super. 2004) (stating a "discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion" (citation omitted)). "Where the evidentiary question involves a discretionary ruling, our scope of review is plenary…." ***Commonwealth v. Huggins***, 68 A.3d 962, 966 (Pa. Super. 2013) (citing ***Commonwealth v. Delbridge***, 859 A.2d 1254, 1257 (Pa. 2004)).

Relevance is the threshold for admissibility of evidence. ***See Commonwealth v. Cook***, 952 A.2d 594, 612 (Pa. 2008). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." ***Commonwealth v. Jackson***, 283

A.3d 814, 817 (Pa. Super. 2022) (citing Pa.R.E. 401 (quotation marks omitted)). "All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. Finally, "[e]ven when evidence is wrongfully admitted, however, such error is subject to harmless error analysis." *Commonwealth v. Bieber*, 283 A.3d 866, 877 (Pa. Super. 2022) (citation omitted); *see also Commonwealth v. Noel*, 104 A.3d 1156, 1169 (Pa. 2014) ("If a trial error does not deprive the defendant of the fundamentals of a fair trial, his conviction will not be reversed." (citation omitted)).

In his first issue, Appellant claims the trial court erred in admitting his prior PWID conviction into evidence, where it "A) [] did not contradict anything [he] said; B) any impeachment concerned a collateral matter; and C) any probative value was outweighed by prejudicial effect." Appellant's Brief at 28. According to Appellant, "[t]o the extent [he] merely said [on cross-examination that] he was not selling drugs as of March 2018, then, his prior [PWID] conviction did not in fact rebut his testimony." *Id.* at 31 (citation, brackets, and quotation marks omitted); *see also id.* at 33 (arguing "even though [Appellant's] testimony touched on selling drugs, this did not open the door to [admission of] a [prior] conviction that failed to contradict what he actually said"). Appellant further contends, "[t]o the extent [Appellant's] prior conviction constituted impeachment at all, it was impeachment on a collateral matter and thus not allowed under Pennsylvania law." *Id.* at 34 (bold and italics omitted); *see also id.* at 38 (claiming Appellant's prior conviction "had

no bearing on the charges at issue" in the instant case). Appellant claims the trial court's "error here was prejudicial and cannot be deemed harmless." *Id.* at 42.

The Commonwealth counters the trial court properly admitted Appellant's prior conviction as impeachment evidence, where his trial testimony raised the issue of Appellant's good character and "opened the door" to introduction of his prior conviction. *See* Commonwealth Brief at 17-26. According to the Commonwealth, Appellant's prior conviction was not a collateral matter, since his trial testimony "that he is not out there selling drugs is part and parcel with his explanation as to the origin of his conflict with the victim." *Id.* at 26. *Cf.* Appellant's Reply Brief at 4 (arguing to the contrary that the Commonwealth improperly sought "to bootstrap the relevance of [the 2018] altercation with Rivera to establish [the] relevance of [Appellant's] prior conviction."). The Commonwealth further argues, "any prejudice that may have resulted from the admission of [Appellant's prior] conviction was ameliorated by the trial court's cautionary and final instructions." Commonwealth Brief at 22; *see also* N.T., 1/23-26/23, at 498, 565-66 (discussed *infra*).

Section 5918 of the Judicial Code provides as follows:

**§ 5918. Examination of defendant as to other offenses.**

No person charged with any crime and called as a witness in his own behalf, shall be asked, or if asked, shall be required to answer, any question tending to show that he has … been convicted of any offense other than the one wherewith he shall

- 10 -

then be charged, or tending to show that he has been of bad character or reputation unless:

(1) he shall have at such trial, personally or by counsel, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has **given evidence tending to prove his own good character or reputation**[.]

42 Pa.C.S.A. § 5918(1) (emphasis added).

"Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity." ***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009) (citing Pa.R.E. 404(b)(1), *supra*). "However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident." ***Id.*** (citing Pa.R.E. 404(b)(2), *supra*). "In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against" its potential for unfair prejudice. ***Id.***; Pa.R.E. 404(b)(2); ***see also Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007) ("'Unfair prejudice' means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.") (quoting Pa.R.E. 403, Comment). "Additionally, when weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence." ***Id.***

This Court has observed,

> [e]vidence that might otherwise be inadmissible may be introduced for some other purpose, particularly where [a]ppellant's own testimony "opens the door" for such evidence to be used for impeachment purposes. ***See*** Pa.R.E. 607(b) ("The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules."). "A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." ***Commonwealth v. Nypaver***, … 69 A.3d 708, 716-17 (Pa. Super. 2013) (citations omitted).

***Commonwealth v. Murphy***, 182 A.3d 1002, 1005 (Pa. Super. 2018) (footnote omitted); ***see also*** 42 Pa.C.S.A. § 5918(1), ***supra***. However, "Pennsylvania courts go cautiously when considering whether to admit evidence of prior convictions for purposes of impeaching the credibility of a defendant testifying in his own behalf." ***Commonwealth v. Bullock***, 286 A.3d 1282, 1285 (Pa. Super. 2022) (citation omitted).

Instantly, the trial court opined it did not abuse its discretion in admitting Appellant's prior conviction into evidence:

> Appellant's prior conviction for [PWID] was rightly permitted to impeach his testimony at trial. Appellant opened the door to such impeachment by way of his own testimony. At trial, Appellant was asked on cross-examination about the nature of his conflict with the victim in the case, and [Appellant] stated "Why are you worried about what I'm doing? I'm not out here selling drugs or out here robbing people." N.T., 1/23-26/23, at 435. This statement is directly contradicted by Appellant's conviction for [PWID], stemming from a [drug] delivery that occurred close in time … (three months after) [to the 2018] altercation with the victim in this case. ***Id.*** at 463. **The nature of the conflict between Appellant and [the] victim is a material matter for which impeachment was proper, especially when Appellant was claiming self-defense. Appellant attempted to characterize his "business" and transactions with the**

- 12 -

**victim's coworkers in a certain light that made it appear as if the victim's reservations about Appellant were some sort of unfounded or irrational animus—Appellant's relatively contemporaneous [PWID] charges and conviction suggests the opposite is likely.**

Further, the issue of Appellant's prior [conviction] is not unduly prejudicial. **The mere fact that Appellant had sold cocaine in the past does not, in and of itself, lead to a conclusion that Appellant is a violent person or was necessarily the aggressor in his [August 2020] altercation with the victim.** Plenty of people who sell cocaine have never stabbed anybody. Further, it is not significantly more prejudicial than Appellant's own admissions at trial that he was selling pornographic DVDs and weapons from the trunk of his car.[7] If anything, being a seller of weapons seems more likely to indicate Appellant's propensity for violence than his selling of cocaine. In fact, at trial, photographs of such weapons were shown to the jury, and these weapons matched the weapon used against the victim in this case.

Trial Court Opinion, 7/11/23, at 2-3 (emphasis added; footnote in original, remaining footnotes omitted). Our review discloses the trial court's reasoning is supported by the record and the law. ***See id.***

Further, This Court's decision in ***Hernandez***, ***supra***, is closely on point.[8] There, the defendant took the stand at his jury trial on two counts of PWID,

---

[7] At trial, photographic evidence was offered of certain items that Appellant sold out of the trunk of his car. In addressing this, Appellant stated "I sell them things and a lot more. The[ photographs] only show, like, weapons and stuff of that nature. Like, that's not the — that's just one grain of sand on the beach of what I sell." N.T.[, 1/]23-26[/]2023, at 419. Appellant further stated[,] "I have no problem with selling anything." ***Id.*** at 420.

[8] We are unpersuaded by Appellant's attempt to distinguish ***Hernandez***. ***See*** Appellant's Brief at 37-38.

and testified to "his twenty-year addiction to heroin." *Id.* at 648. The following exchange occurred on cross-examination of the defendant:

> Q [The prosecutor]: Now, do any drug [users] [] sell [drugs] to support their habits?
>
> A [The defendant]: Almost all the addicts, what they do is they steal in stores, they steal cars, they do anything to maintain their habit.
>
> Q: Including selling some drugs and using some, correct?
>
> A: Since I've been a junkie, **I don't sell drugs**. I'm an addict.
>
> Q: You've been a junkie for 20 years?
>
> A: Yes.

*Id.* (emphasis added; citation omitted). The prosecutor then requested a sidebar and sought to introduce the defendant's two prior convictions for PWID, arguing his foregoing testimony about not selling drugs "opened the door" to introduction of the evidence. *Id.* The trial court agreed and admitted the prior convictions. *Id.* at 649. On appeal, the defendant challenged the evidentiary ruling and this Court affirmed, holding as follows:

> [The defendant's] own unsolicited testimony that he had never sold drugs constituted an assertion of good character that the prosecutor was entitled to contradict by reference to countervailing evidence of prior convictions.

*Id.* at 648; *see also id.* at 651 ("When a defendant makes an unsolicited attestation of his good character, 42 Pa.C.S. § 5918 clearly permits the prosecution to question the attesting defendant about prior convictions that directly contradict his assertion.").

- 14 -

Moreover, in the instant case, immediately after introduction of Appellant's prior conviction at trial, the trial court issued the following cautionary jury instruction:

Let me make it very clear to you, **the fact that [Appellant] [] had pled guilty to a drug offense in no way suggests that he is guilty of this offense. It was intended to be [] testified to on the sole issue of impeachment.**

During the testimony of [Appellant], it's alleged that he made a statement that it's not like I'm out here selling drugs. And because of that I've allowed the Commonwealth to bring in a witness to show in fact that wasn't a true statement when [Appellant] made it on the witness stand.

That doesn't mean that you can decide, hey, this guy sold drugs, he must be guilty of attempted murder, he must be guilty of aggravated assault or the other charge. There's no particular relationship to that, so it's not like people that sell drugs also are people that go out and stab people or try to kill them or endanger their lives. It's only to decide is he credible. And you can either accept that he's credible or accept that he's not credible and factor that in as to whether or not you believe his version of events that he testified to in this case, okay?

N.T., 1/23-26/23, at 498 (emphasis added).

Subsequently, during jury instructions, the trial court cautioned as follows:

Again, you've also heard testimony that [Appellant] was convicted of the crime of [PWID]. **The only purpose for which you can consider this evidence of a prior conviction is that in deciding whether or not to believe all or part of [Appellant's] testimony**. In doing so, you may consider the type of crime committed, how long ago it was, and how it may affect the likelihood that [Appellant] has testified truthfully in this case.

- 15 -

*Id.* at 565-66 (emphasis added).[9]

We conclude the trial court's cautionary instructions were sufficient to ameliorate any undue prejudice to Appellant. *Dillon*, 925 A.2d at 141. It is well settled the "law presumes that a jury will follow the trial court's instruction." *Commonwealth v. Gilliam*, 249 A.3d 257, 274 (Pa. Super. 2021) (citation omitted). Based on the foregoing, there is no merit to Appellant's first issue challenging admission of Appellant's prior conviction. *See Hernandez*, *supra*.

In his second issue, Appellant argues the trial court abused its discretion in excluding Rivera's 2009 conviction, where this evidence "supported [Appellant's] claim of self-defense and was neither so dissimilar to Rivera's

_____

[9] The trial court additionally cautioned the jury,

> [t]here was testimony that tended to prove that [Appellant] was involved in some other conduct -- improper conduct for which he is not on trial, and I'm talking about the events that occurred roughly two years earlier[, *i.e.*, the 2018 altercation,] when there was an assaultive behavior involving [Appellant] and [Rivera].... This evidence can only be used for one purpose only, and that was the Commonwealth has alleged that this tends to show … the motive, all the circumstances surrounding the case and a background as to why this event and issue may have occurred, but that's the only purpose you can use it for. Again, you can't infer from that, that [Appellant is] [] aggressive or abusive or [] pugilistic or whatever. Simply that there's a past, this past relates to this present, and that's the only circumstance under which you can use it.

N.T., 1/23-26/23, at 565.

- 16 -

alleged conduct nor remote in time as to lack probative value." Appellant's Brief at 45 (bold omitted). According to Appellant, "[w]ith regard to similarity, Rivera's [2009] conviction was for simple assault and predicated on his punching a police officer in the head as the officer attempted to arrest his friend." *Id.* at 47; *see also* Appellant's Reply Brief at 14 (arguing any differences between the altercation underlying Rivera's 2009 conviction and the August 2020 stabbing were "superficial"). With respect to temporal proximity, Appellant concedes that "the time between the incidents at issue here is significant." Appellant's Brief at 48. Nevertheless, Appellant argues that

> the lag here is not so substantial as to warrant complete exclusion of this important evidence where nobody ever articulated any reason why a tendency to react with violence would diminish over time.

*Id.* at 48-49; *see also id.* at 45 (claiming, "other evidence suggested [that Rivera's violent] tendencies remained due to [Rivera's] chronic, incurable mental health issues.").

The Commonwealth counters that the trial court properly excluded Rivera's 2009 conviction, where (1) it "is too remote in time as it occurred over a decade before the instant offense"; and (2) "[Rivera's 2009] conviction and the instant offense are radically different and bear no similarity." Commonwealth Brief at 27.

Our Supreme Court has stated,

when a defendant asserts a claim of self-defense[, e]vidence of the victim's prior convictions involving aggression may be admitted, if probative, … as character/propensity evidence, as indirect evidence that the victim was in fact the aggressor.

*Commonwealth v. Christine*, 125 A.3d 394, 398 (Pa. 2015) (citation omitted). "[O]nly those past crimes of the victim that are similar in nature and not too distant in time will be deemed probative, with the determination as to similar nature and remoteness resting within the sound discretion of the trial judge." *Commonwealth v. Mouzon*, 53 A.3d 738, 741 (Pa. 2012) (citation and footnote omitted). Our Courts have stressed that temporal proximity and similarity of facts are key; where "strikingly disparate factual scenario[s]" exist or the prior crime is too remote, the trial court may properly exclude a victim's prior convictions. *Christine*, 125 A.3d at 399 (footnote omitted).

Instantly, the trial court held that it properly excluded evidence of Rivera's 2009 conviction, where it

resulted from [Rivera's] punching a police officer while being arrested and was **over a decade old** at the time of the incident that led to the instant case (namely, [Rivera's 2009] conviction was a result of conduct he undertook in 2008, and the incident which led to the instant case occurred in 2020). Therefore, it was proper to exclude such evidence as **it was neither similar in nature to the victim's alleged conduct in the instant case, nor was it recent**. Accordingly, it would have been improper to allow … Appellant to bring evidence of such prior misconduct in order to show that [Rivera] acted in accordance with it. Further, Appellant did not seek to introduce such evidence based on his *knowledge* of same (such as to show his belief that he needed to act in self-defense was reasonable), but rather only as conformity evidence—on this basis[, Rivera's 2009 conviction] was rightly

excluded.

Trial Court Opinion, 7/11/23, at 4-5 (bold emphasis added; italics in original; footnote omitted).

Our review discloses that the trial court's foregoing reasoning is supported by the record and the law. *See id.* We conclude the trial court did not abuse its discretion in excluding Rivera's 2009 conviction, where such evidence was too stale and factually dissimilar to be admitted under **Christine** and **Mouzon**. **See**, **e.g.**, **Commonwealth v. Gilliard**, 446 A.2d 951, 956 (Pa. 1982) (upholding trial court's exclusion of murder victim's prior convictions of violent crimes, where they predated the crime at bar by more than 20 years). **Cf. Commonwealth v. Beck**, 402 A.2d 1371, 1373 (Pa. 1979), overruled in part by **Christine**, 125 A.3d at 400 (holding trial court erred in excluding evidence of stabbing victim's three-year-old conviction for violent crime, where it was not too remote and bore sufficient similarity to the charges at bar). Appellant's second issue does not merit relief.

In his third and final issue, Appellant claims the trial court abused its discretion in granting the Commonwealth's motion *in limine* to exclude evidence related to Rivera's mental health, including "symptoms of an explosive temper or overreacting." Appellant's Brief at 52; **see also** Appellant's Reply Brief at 19 (arguing the trial court should have permitted the defense "to present evidence of Rivera's symptoms through Dr. Stevens' testimony.").

Prior to the commencement of trial, Appellant's counsel addressed the matter of Rivera's mental health as follows:

[Defense counsel]: … [W]ithin [Rivera's] medical records that were provided in discovery, [his diagnoses of] bipolar [disorder] and [attention deficit/hyperactivity disorder (ADHD)] are listed, and … it is listed as … an ongoing problem, that's something he still experiences.

And so I would submit that that -- What's in the medical record, as well as what was put on record at the prior case[, the trial court] would at least allow me to ask [Rivera] questions about how these -- I won't even ask what the diagnoses are. I would ask, do you have conditions that make you prone to violence or prone to outbursts? And if [Rivera] says no, I may not be able to impeach him, but I think there's enough evidence there for me to at least ask those questions of him.

THE COURT: I had [the] not too great joy of having been married to a woman who had bipolar disorder, and there were times she went for years and years with good ordinary behavior and then she would become manic.

So the question is whether or not [Rivera] was in a manic state during that period of time. If he was in a depressive state, that's not the kind of conduct that is indica[tive] of [a] depressive state -- punching, stabbing, whatever. So if we have no indication that [Rivera] was experiencing at that time some sort of a manic [episode], I don't see that you can get [Rivera's 2009 conviction] in. It's not very relevant in terms of time. Show me that [Rivera] was acting crazy at that time. And I apologize for the use of that word; I just am used to it.

[Defense counsel]: Again, Your Honor, the reason I can't obtain [Rivera's] medical history, the law does not allow me to do that.

THE COURT: Nor do I.

N.T., 1/23-26/23, at 14-15. The trial court excluded evidence of Rivera's mental health, stating, "I'm not going to let [the defense] cross-examine [Rivera] on a diagnosis which is unsupported, there's no indication whatsoever

- 20 -

as to what if any manifestations there were of this diagnosis and how that relates to this event." *Id.* at 19.

On appeal, Appellant argues the trial court "improperly relied on its own personal experience" with bipolar disorder in ruling on this matter. Appellant's Brief at 54-55 (bold and italics omitted) (citing *Ney v. Ney*, 917 A.2d 863, 866 (Pa. Super. 2007) ("A trial court may not consider evidence outside of the record in making its determination. Nor may this court uphold a trial court's order on the basis of off-the-record fact." (citations and quotation marks omitted)). Further, Appellant contends that "[i]mproper reliance on personal experiences aside, the court provided no valid reason to exclude this relevant evidence." *Id.* at 56 (bold and italics omitted); *see also id.* at 58 (asserting evidence of Rivera's mental health "increased the likelihood that [Rivera] was the aggressor in this case.").

The Commonwealth counters the trial court properly precluded evidence related to Rivera's mental health, where any defense questioning about this matter would constitute an improper "fishing expedition." *See* Commonwealth Brief at 32-38. The Commonwealth argues that

> [t]he only information concerning the victim's diagnosis comes from a sentencing transcript from over a decade prior. That sentencing transcript[] does not, and cannot, reflect how the diagnoses have affected the victim currently, what symptoms if any the victim has, and whether the victim was experiencing those symptoms around the time period of the stabbing. The trial court's reference to its prior spouse was not a basis for its decision. It was, at best, a segue into asking the very relevant question of what indication was present that the victim was

experiencing those symptoms [at the time of the August 2020 altercation].

*Id.* at 36 (formatting modified).  We agree.

As the trial court cogently opined,

the evidence Appellant sought to admit on the issue [of Rivera's mental health] would have been misleading and prejudicial. Appellant sought to bring in testimony from a 2009 proceeding against the victim in which Dr. … Stevens, a psychiatrist, testified that the victim had been diagnosed with bipolar disorder and [ADHD] and that the victim had shown signs of having an explosive temper and was prone to overreacting." **Dr. Stevens was dead at the time of the trial, and would not have been able to testify, maximizing the prejudicial and misleading effect of utilizing a decade (plus) old diagnosis of the victim**.  Just as was the case with [Rivera's 2009] conviction, this was too distant in time to be probative in the instant case.  It was proper to exclude such evidence as unduly prejudicial under Rule of Evidence 403.

Trial Court Opinion, 7/11/23, at 5 (emphasis added; footnotes omitted).

The trial court's reasoning is again supported by the law and the record.

*See id.*  We conclude the trial court did not abuse its discretion in excluding evidence of Rivera's mental health.  ***See***, ***e.g.***, ***Commonwealth v. Glass***, 50 A.3d 720, 726 (Pa. Super. 2012) (upholding trial court's exclusion of evidence related to rape victim's mental health, where the defendant failed to establish a sufficient evidentiary foundation and the victim's "perception and recollection were not really at issue at trial." (citation omitted)).

Based on the foregoing, as we discern no abuse of the trial court's discretion in its evidentiary rulings, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/21/2024